FILED
MAR 17 2009
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL HANIC, | ) | CR.06-4266-RHB |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| DOUG WEBER, Warden, South Dakota State Penitentiary, and TIM SYMES, Accounting and Business Office, South Dakota State Penitentiary, all in their individual and official capacities, | ) | |
| Defendants. | ) | |

## NATURE AND PROCEDURE OF THE CASE

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, seeking damages and relief for the alleged violation of his constitutional rights. Plaintiff alleges that defendants violated his rights when officials seized a portion of a check he received from the Confederated Salish and Kootenai Tribes and applied that portion to his court-ordered fees and/or costs of incarceration. Defendants move for summary judgment based upon the doctrine of qualified immunity.

# BACKGROUND

In 2006, the South Dakota State Penitentiary Accounting and Business Office (SDSPABO) received a check dated August 2, 2006, payable to plaintiff. Defendants' Statement of Material Fact (DSMF), 19. The check came from the Confederated Salish and Kootenai Tribes. DSMF, 19. On the check was the notation "Tribal Dividend." Plaintiff's Statement of Material Fact (PSMF), 5. In effect at the time was Policy 1.B.10, currently known as Policy 1.1.B.2, which provides in pertinent part as follows:

> **Policy:**
> Each inmate will have an account set up in his/her name through the Department of Corrections Inmate Banking System (IBS). Deposits to and disbursements from an inmate's institutional account will be made according to the procedures established by this policy.
>
> . . .
>
> **Disbursement Account:**
> A. The Disbursement Account is established to pay debts from court ordered obligations and other prison related obligations that are listed on an inmate's Financial Plan.
> B. After an inmate's commissary spending account balance/deposit limit reaches $140 during any twenty-eight (28) day period, fifty percent (50%) of any remaining funds received are placed in the Disbursement Account.
> C. Court ordered obligations and other costs will be paid according to the inmate's Financial Plan and will be distributed and recorded on the IFR database in the inmate banking system as follows, according the following priority:
>     1. Child Support (Obligation #4 on IFR database).
>     2. Restitution (Obligation #1-#3 on IFR database).
>         a. Through a County:
>             1) Active.
>             2) Doubtful.

        b.    Civil:
            1)    To an individual.
            2)    To a provider.
            3)    To insurance or other 3rd party payee.
3.    Fines, fees and court ordered sanctions (Obligation #1-#3 on IFR database):
      a.    Active.
      b.    Doubtful.
4.    Costs incurred while in the custody of the DOC (Obligation #5 on IFR database). An inmate may be charged for costs incurred while in the custody of the DOC when the DOC has to pay costs or bills as a result of the inmate's behavior and documentation of the costs exist (See SDCL § 24-2-29).
5.    Costs of incarceration pursuant to SDCL § 24-2-28 (Only if 1 through 4 are non-existent).

. . .

**Savings and Frozen Accounts:**

A.    There is a minimum $100.00 frozen account balance before money may be spent from the savings account unless authorized due to indigence or the inmate is serving a life or death sentence.

. . .

    4.    An inmate may not accumulate more than $250.00 in the savings account.
    5.    Any money over 350.00 ($100.00 frozen account plus $250.00 in savings account) must go toward the obligations the inmate has listed in his/her disbursement account (excluding cost of incarceration).

In accordance with this policy, the $400 dollar check was disbursed among plaintiff's accounts, resulting in $133.75 being applied towards plaintiff's costs of incarceration. DSMF, 4; PSMF, 8.

Plaintiff contested the application of this money to his costs of incarceration, alleging that the money was a tribal per capita payment and was protected from seizure pursuant to 25 U.S.C. § 410. DSMF, 23-24; PSMF, 9-10. Defendants requested information from plaintiff. DSMF, 25; PSMF, 14. Plaintiff provided a copy of his Certificate Degree of Indian Blood. PSMF, 14. Plaintiff also provided a letter dated December 12, 2006, authored by Laurence Kenmille, an enrollment research manager for the Confederated Salish and Kootenai Tribes. The letter describes the process of a per capita distribution and then states "[b]y Congressional action these funds are exempted from taxation or from inclusion in determining eligibility for receiving benefits from federal or federally assisted programs in the amount up to $2,000 per issuance." Supplement to Complaint, Docket #6.

Defendants contend that plaintiff "was given an opportunity to produce evidence to support his claim." DSMF, 26. Defendants further allege that plaintiff did not produce "any documentation to support his claims during the grievance process" and did not produce the letter dated December 12, 2006, or a copy of the check until he commencement of this action. DSMF, 27, 29-30. Defendants claim that because plaintiff did not provide any evidence that the money was protected the SDSPBAO "assumed that the check had been processed correctly." DSMF, 26.

Defendants now move for summary judgment alleging that the money is not protected under federal law and that they are entitled to qualified immunity.

4

Plaintiff opposes this motion for summary judgment and also moves for summary judgment seeking the Court's order of the reimbursement of the money that was alleged to have been illegally seized.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The Supreme Court has instructed

that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 106 S. Ct. at 1356.

Based on the foregoing, the trilogy of Celotex, Anderson, and Matsushita provides the Court with a methodology in analyzing a motion for summary judgment. See generally 1 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 5.04 (2d ed. 1991) (discussing the standards for granting summary judgment that have emerged from Matsushita, Celotex, and Anderson). Under this trilogy, it is incumbent upon the nonmoving parties to establish significant probative evidence to prevent summary judgment. See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 979 (8th Cir. 1991).

## DISCUSSION

Defendants contend that they are immune from suit based on the doctrine of qualified immunity. The United States Supreme Court has held that government agents may be immune from suit if "'their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" Behrens v. Pelletier, 516 U.S. 299, 306, 116 S. Ct. 834, 838, 133 L. Ed. 2d 773 (1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982)). The United States Supreme Court has held that "[a] court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). Then "ask whether the right is clearly established or, put another way, 'whether it would be clear to a reasonable [official] that [his] conduct was unlawful in the situation [he] confronted.'" Lindsey v. City of Orrick, 491 F.3d 892, 897 (8th Cir. 2007) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). Furthermore, the United States Supreme Court has held that the courts must not frame the right too generally. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). As a result, in the instant case, the constitutional right would not be framed as a general right to be free from unlawful seizure of property under the Fourth Amendment, but a right to be free from unlawful seizure of funds designated as "Tribal Dividend."

Plaintiff contends that this money is protected under 25 U.S.C. § 410, as it is the proceeds of a tribal per capita distribution. Title 25 of the United States Code, section 410 states,

> No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior.

The check received from the Confederated Salish and Kootenai Tribes does not contain any indication that it is a payment resulting from the "lease or sale of lands held in trust." Additionally, even assuming defendants received the letter dated December 12, 2006, from Laurence Kenmille, they would only have been informed of the prohibition of taxation on a tribal per capita distribution. See Supplement to Complaint, Docket #6. A per capita distribution does not necessarily equate to the disbursement of monies resulting from the sale or lease of lands. As a result, the Court finds that there is no constitutional right to be free from the seizure of funds designated only as "Tribal Dividend." There was no evidence presented to either defendants or this Court which would indicate that this money is protected under 25 U.S.C. § 410. As a result, the Court finds that the doctrine of qualified immunity protects defendants from suit.

Plaintiff has sought not only reimbursement of the seized money but also declaratory judgment and injunctive relief. As the Court has determined that

plaintiff's constitutional rights were not violated by the seizure, the Court denies the requested relief. Moreover, the Court notes that plaintiff has been granted parole, thus rendering the action seeking future prohibitions of such seizures moot. Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket #23) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket #32) is denied.

IT IS FURTHER ORDERED that defendant's motion to strike (Docket #37) is denied.

IT IS FURTHER ORDERED that defendants' motion to supplement the statement of material facts (Docket #43) is granted.

Dated this 17 day of March, 2009.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE